FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 AUG 17  PM 4: 20

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MIGNON FAGET, LTD. | § § § § | CIVIL ACTION **04-2364** |
| VERSUS | § § § | NO. _____ **SECT. R MAG. 1** |
| LETICIA G. TUMULTY, JOSEPH N. TUMULTY, JR. AND SILVER DREAM, LLC | § § § § | SECTION _____ |
| *   *   *   *   *   *   * | § § | MAGISTRATE DIVISION _____ |

## VERIFIED COMPLAINT

Plaintiff, Mignon Faget, Ltd., alleges as follows:

**Parties**

**1.**

Plaintiff joins the following parties as defendants in this matter:

(a) Leticia G. Tumulty, an individual residing in, and a citizen of, the State of Louisiana. On information and belief, Leticia G. Tumulty resides within the geographic boundaries of this District;

(b) Joseph N. Tumulty, Jr., an individual residing in, and a citizen of, the State of Louisiana. On information and belief, Joseph N. Tumulty, Jr. resides within the geographic boundaries of this District; and

(c) Silver Dream, LLC ("Silver Dream," together with Leticia G. Tumulty and Joseph N. Tumulty, or "defendants"), a limited liability company organized and existing

Fee _____
Process _____
X Dktd _____
___ CtRmDep _____
___ Doc. No. _____

under the laws of the State of Louisiana with its principal place of business in Louisiana in this District.

On information and belief, defendants, individually or collectively, are doing and have done business under the name "Silver Dream." On information and belief, prior to the formation of the defendant limited liability company, the individual defendants were doing business under the name "Silver Dream."

### Jurisdiction

**2.**

This is an action for injunctive relief, punitive damages and attorney's fees for defendants' willful copyright infringement under 17 U.S.C. §§ 101 *et seq.*; for willful trade dress infringement under 15 U.S.C. § 1125(a); for willful dilution of plaintiff's distinctive and famous trade dress under 15 U.S.C. § 1125(c); for unfair competition and trade dress infringement under Louisiana law; for violation of the Louisiana Anti-Dilution Statute; La. R.S. § 51:223.1; and for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. §§ 51:1401-1420.

**3.**

Because this action arises under the copyright laws of the United States, this Court has jurisdiction over the subject matter pursuant to the provisions of 28 U.S.C. §§ 1331, 1338(a). Because this action also includes claims for trade dress infringement, dilution and unfair competition under the Lanham Act, this Court also has jurisdiction over the subject matter pursuant to the provisions of 28 U.S.C. §§ 1331, 1338(a), (b) and 15 U.S.C. § 1121.

**4.**

Additionally, because the state law claims arise out of the same facts, circumstances and transactions as the federal law claims, this Court may exercise supplemental jurisdiction over those state law claims pursuant to 28 U.S.C. § 1367.

**5.**

Because the defendants are, on information and belief, residents and citizens of Louisiana and because defendants have committed and are committing willful copyright infringement and other tortious and unlawful acts in the State of Louisiana, this Court may exercise personal jurisdiction over the defendants.

**Venue**

**6.**

Because a substantial part of the events and omissions giving rise to the claims asserted in this complaint occurred in this judicial district, and because defendants may be found in this judicial district, venue is appropriate in this Court pursuant to the provisions of 28 U.S.C. § 1391(b), (c), and 28 U.S.C. § 1400(a), (b).

**Factual Allegations**

**7.**

Plaintiff is a highly successful jewelry design house and jewelry retail merchant located in this judicial district. It has been in business since 1969 and actively engaged in the design, production and sale of jewelry since 1970.

**8.**

Plaintiff's design and production facility is located in New Orleans, Louisiana. Plaintiff markets its jewelry in a variety of manners, including through four of its own retail stores in

New Orleans and Metairie, Louisiana, through a network of authorized retailers across the United States, through a catalog mail order operation, and over the Internet.

9.

Plaintiff enjoys an excellent reputation and wide-spread recognition as a famous designer of jewelry for men and women. Some recent examples of plaintiff's wide-spread recognition and fame include: (1) commissioned Designer of the 2003 Mayor's Arts Award for the City of New Orleans; (2) recipient of the Mayor's Arts Award in 2001; and (3) recognized in the August 26, 2003 issue (Vol. 24., No. 25) of *Gambit Weekly*, as "Best Jewelry Designer" in Reader's Poll. Attached as Exhibit "A" hereto is a listing of plaintiff's awards, honors and recognitions, and/or those of Ms. Mignon Faget herself, the owner of, and designer for, plaintiff. Attached as Exhibit "B" hereto is a listing of the many exhibits of plaintiff's works that have taken place over the course of over thirty years of jewelry design.

10.

In 1980, plaintiff first conceived and created a design for a tulip pendant (the "MFL Tulip Pendant") and tulip dangle earrings (the "MFL Tulip Dangle Earrings"). Both designs enjoyed significant commercial success. Plaintiff capitalized on that success in 1998, with the creation of two additional tulip-inspired jewelry designs, the tulip linking bracelet (the "MFL Tulip Linking Bracelet") and a tulip ring (the "MFL Tulip Ring," and, collectively with the MFL Tulip Pendant, MFL Tulip Dangle Earrings and MFL Tulip Linking Bracelet, the "MFL Tulip Collection"). Photographs of all designs comprising the MFL Tulip Collection are attached hereto as Exhibits "C," "D," "E" and "F," respectively.

11.

The designs of the MFL Tulip Collection are wholly original with the plaintiff and constitute copyrightable subject matter under the laws of the United States.

4

**12.**

Since 1980, with respect to the MFL Tulip Pendant and Tulip Dangle Earrings, and since 1998, with respect to the MFL Tulip Linking Bracelet and Tulip Ring, plaintiff has reproduced the original MFL Tulip Collection designs and has marketed the reproductions successfully via the Internet, by mail order and through a network of authorized retailers located across the United States.

**13.**

In connection with designing and marketing the MFL Tulip Collection, and all of its jewelry designs, plaintiff has established a unique, highly distinctive trade dress.

**14.**

As part of its highly successful business, plaintiff has built a successful advertising campaign and concept, and has spent significant sums on advertising its jewelry designs, including without limitation the MFL Tulip Collection designs.

**15.**

Plaintiff's jewelry designs in general, including without limitation the designs comprising the MFL Tulip Collection, have come to be recognized easily and widely by the public as plaintiff's designs. The trade and the public also recognize plaintiff's products as being of high quality.

**16.**

Defendants have been manufacturing, reproducing, selling and otherwise marketing knockoff jewelry designs that are copies of the MFL Tulip Collection designs. Defendants' conduct in copying and selling plaintiff's designs has been willful and intentional, and calculated to trade on plaintiff's reputation and goodwill.

**17.**

In creating all of its designs, including, without limitation, the designs of the MFL Tulip Collection, plaintiff invests and has invested significant time and effort, and incurs and has incurred significant expense.

**18.**

In producing and selling all of its designs, including, without limitation, the MFL Tulip Collection pieces, plaintiff also invests and has invested considerable time, effort and expense in developing and implementing a meticulous production process and quality control procedures. The result of this investment is high quality jewelry that is recognized by the trade and the consuming public as such.

**19.**

Defendants, by contrast, have spent little to no time, effort or expense in copying their knockoffs of plaintiff's designs.

**20.**

Defendants' manufacturing process, while producing knockoffs of plaintiff's designs that are substantially similar to plaintiff's designs, results in a product that is generally inferior in quality to those produced by plaintiff.

**21.**

Plaintiff first became suspicious that defendants might be selling knock-offs of its designs in November of 2003, when a jewelry trade show, known as the Helen Bret Show, was in New Orleans.

**22.**

The Helen Bret organization typically holds three or four shows a year in New Orleans. It is directed at selling jewelry items wholesale to jewelry retailers.

**23.**

At the November 2003 Helen Bret show, plaintiff, Leticia G. Tumulty, sold copies of various MFL Tulip Collection designs, including the specific tulip ring, pendant and earrings pictured in Exhibits "G," "H" and "K" attached hereto.

**24.**

Upon confirming that defendants were selling knock-offs of the MFL Tulip Collection designs at the November 2003 Helen Bret show, on or about November 26, 2003, plaintiff issued a cease and desist letter to defendant Leticia G. Tumulty at the following address: 8004 Willow Street, New Orleans, Louisiana 70118. This address appeared on a business card that defendant Leticia G. Tumulty provided to the buyer of the jewelry items in question; the business card also contained the names "Lety Tumulty" and "Silver Dream." The card contained no phone number. The cease and desist letter was sent via certified U.S. mail service, return receipt requested. Defendants, however, refused to claim the cease and desist letter. *See* Exhibit "I" attached hereto.

**25.**

Plaintiff received no further reports of sales by defendants and could locate no other publicly available information concerning "Lety Tumulty" or "Silver Dream" until the May 2004 Helen Bret Show held in the New Orleans Convention Center on May 22- 25, 2004.

**26.**

At the May 2004 Helen Bret show, defendant Leticia G. Tumulty sold the particular tulip bracelet and tulip earrings pictured in Exhibits "J" and "K" hereto. At the May 2004 Helen Bret show, defendant Leticia G. Tumulty told the purchaser of the tulip bracelet and earrings in question that defendants had an entire showroom of tulip designs. On information and belief,

defendants also sold a number of copies of various MFL Tulip Collection designs at the May 2004 Helen Bret show.

27.

On May 24, 2004, plaintiff had a cease and desist letter sent to defendant Leticia G. Tumulty via e-mail delivery to the e-mail address listed on a business card that defendant Leticia G. Tumulty provided to the purchaser of the tulip bracelet and earrings. *See* Exhibit "L" hereto. On May 25, 2004, the final day of the May 2004 Helen Bret show in New Orleans, the same letter was sent to be hand delivered to defendant Leticia G. Tumulty at the Silver Dream booth at the Helen Bret show. *See* Exhibit "M" hereto. Defendant Leticia G. Tumulty refused to accept or sign for the letter. When the courier dropped the cease and desist letter at Leticia G. Tumulty's feet, defendant Leticia G. Tumulty threw the letter at the courier.

28.

Shortly after May 25, 2004, plaintiff and defendants Leticia G. Tumulty and Joseph N. Tumulty, Jr. entered into a standstill agreement pursuant to which defendants Leticia G. Tumulty and Joseph N. Tumulty, Jr. agreed not to sell any of the tulip-inspired designs at issue, and plaintiff would not file suit, while the parties attempted to resolve this matter without litigation. Those negotiations stalled, however, on August 2, 2004, and this suit ensued.

## COUNT I

### Copyright Infringement

29.

Plaintiff repeats and realleges the allegations set forth in paragraphs 1-28 of the Verified Complaint, as if fully set forth in this paragraph.

30.

Since 1980, with respect to the MFL Tulip Pendant and Tulip Dangle Earrings, and since 1998, with respect to the MFL Tulip Ring and Tulip Linking Bracelet, until the present date, plaintiff has complied with the Copyright Act of 1976 and all other laws governing copyright.

31.

On August 25, 2003, plaintiff registered the MFL Tulip Pendant with the Register of Copyrights. A copy of the Certificate of Registration, number VA 1-201-273, is attached hereto as Exhibit "N."

32.

On September 2, 2003, plaintiff filed applications for registration of its copyright in the MFL Tulip Dangle Earrings, Tulip Ring and Tulip Linking Bracelet, as derivative works incorporating MFL's earlier MFL Tulip Pendant. *See* Exhibits "O," "P" and "Q." By letter dated September 11, 2003, the Register of Copyright notified plaintiff of her refusal to register these designs on the grounds that, as derivative works, the new material did not meet the threshold required for copyright protection. *See* Exhibit "R" hereto.

33.

Despite the wrongful refusal of the Register of Copyrights to register plaintiff's copyright in the MFL Tulip Dangle Earrings, Tulip Ring and Tulip Linking Bracelet, those designs are "derivative works," as defined by 17 U.S.C. §101, incorporating the MFL Tulip Pendant, and constitute new, copyrightable authorship that is owned by plaintiff. Alternatively, if it is found that the MFL Tulip Dangle Earrings, Tulip Ring and Tulip Linking Bracelet contain no new, copyrightable authorship, those designs contain copyrightable subject matter owned by plaintiff to the extent that they incorporate the MFL Tulip Pendant.

9

**34.**

Since 1980, with respect to the MFL Tulip Pendant and Tulip Dangle Earrings, and since 1998, with respect to the MFL Tulip Ring and Tulip Linking Bracelet, plaintiff has reproduced, and sold the reproductions of, all designs comprising the MFL Tulip Collection. All reproductions of those designs made by plaintiff have been reproduced and distributed in strict conformity with the provisions of the Copyright Act of 1976 and all other laws governing copyright.

**35.**

Since 1980, plaintiff, a citizen of the United States, has been and still is the sole owner of all rights, title and interest in and to the copyright in the designs comprising the MFL Tulip Collection.

**36.**

Prior to today's date, defendants have infringed the plaintiff's copyright in the designs of the MFL Tulip Collection, without plaintiff's consent, by copying, making derivative works incorporating, manufacturing, offering for sale and selling those jewelry designs.

**37.**

Defendants' copyright infringement has damaged plaintiff in a sum not presently known, but believed to be significant.

**38.**

Plaintiff has no adequate remedy at law.

**39.**

Unless enjoined, defendants will continue to cause injury to plaintiff.

**40.**

Plaintiff is entitled to preliminary and permanent injunctive relief, damages, attorney's fees, impoundment of defendants' infringing inventory during the pendency of this action and destruction of the inventory as part of the final judgment.

## COUNT II

### Federal Trade Dress Infringement

**41.**

Plaintiff repeats and realleges the allegations contained in Paragraphs 1–40 of this Verified Complaint, as if fully set forth in this paragraph.

**42.**

Beginning long after plaintiff was manufacturing and selling its jewelry designs, including, without limitation, the MFL Tulip Collection, using plaintiff's unique, distinctive, widely-recognized and famous trade dress, defendants began manufacturing and selling their substantially similar knockoffs of plaintiff's jewelry designs, thereby appropriating in its entirety plaintiff's trade dress.

**43.**

These acts of trade dress infringement by defendants are likely to and have caused confusion with plaintiff's trade dress.

**44.**

The use by defendants of plaintiff's trade dress as set forth herein is likely to cause and has caused confusion and mistake, and is likely to deceive and has deceived the public as to the source, origin or sponsorship of defendants' goods.

**45.**

The defendants' use of plaintiff's trade dress is calculated to deceive and/or is likely to deceive the trade and the public into believing that:

(a) defendants' jewelry designs provided and sold using plaintiff's trade dress are jewelry designs provided and sold by plaintiff; or

(b) defendant's jewelry designs provided and sold using plaintiff's trade dress are substantially similar to plaintiff's goods marketed by using the same trade dress; or

(c) defendants' jewelry designs provided and sold using plaintiff's trade dress are, in some manner, sponsored or licensed by plaintiff; or

(d) there exists some other relationship between defendants and plaintiff when none, in fact, exists.

**46.**

These actions by defendants constitute infringement of plaintiff's unique, distinctive, widely-recognized and famous trade dress and constitute unfair competition.

**47.**

Such use by defendants of plaintiff's trade dress has caused, will continue to cause and will be likely to cause injury to the business reputation of plaintiff by: (a) confusing the trade and purchasers of jewelry that such goods sold by defendants originated from, are sponsored by, or otherwise have some connection with plaintiff; and (b) leading the trade and the general consuming public to believe, upon seeing defendants' goods, that the nature and quality of plaintiff's goods or plaintiff's business has now changed or now includes the sale and distribution of defendants' inferior goods.

**48.**

Defendants' unlawful and improper acts and conduct have damaged plaintiff in a sum not presently known, but believed to be significant.

**49.**

Plaintiff has no adequate remedy at law.

**50.**

Unless enjoined, defendants will continue to cause injury to plaintiff's trade dress rights, business reputation and standing in the jewelry trade.

**51.**

Plaintiff is entitled to preliminary and permanent injunctive relief, attorney's fees, treble damages of all profits earned by defendants or such other appropriate measure of damages, exemplary damages, and seizure and ultimate destruction of all of defendants' infringing inventory.

## COUNT III

### Federal Dilution

**52.**

Plaintiff repeats and realleges the allegations set forth in Paragraphs 1–51 of this Verified Complaint, as if fully set forth in this paragraph.

**53.**

Plaintiff's trade dress constitutes a famous mark within the meaning of 15 U.S.C. § 1125(c)(1).

**54.**

Beginning after plaintiff's designs and unique trade dress became famous, defendants began copying plaintiff's trade dress.

**55.**

Defendants' continued marketing of plaintiff's designs using plaintiff's unique trade dress has resulted in and will continue to result in both the blurring of the product identification function of plaintiff's trade dress, as well as tarnishment of plaintiff's trade dress as a result of the inferior and poor quality of defendants' goods.

**56.**

Defendants' conduct as described above has resulted in actual damage to plaintiff in an amount not yet determined, but reasonably believed to be substantial.

**57.**

Plaintiff has no adequate remedy at law.

**58.**

Unless enjoined, defendants' conduct is likely to continue to result in the blurring and tarnishment of plaintiff's trade dress.

**59.**

Plaintiff is entitled to preliminary and permanent injunctive relief, attorney's fees, treble damages of all profits earned by defendants or such other appropriate measure of damage, exemplary damages, and seizure and destruction of defendants' offending inventory.

## COUNT IV

### Trade Dress Infringement and
### Unfair Competition under Louisiana State Law

**60.**

Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-59 of this Verified Complaint, as if fully set forth in this paragraph.

**61.**

The foregoing allegations constitute trade dress infringement and unfair competition under Louisiana state law, including La. R.S. §51:211 *et seq.*, entitling plaintiff to injunctive relief and recovery of all profits earned by defendants, or such other appropriate measure of damages.

## COUNT V

### Dilution under Louisiana State Law

**62.**

Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-61 of this Verified Complaint, as if fully set forth in this paragraph.

**63.**

The conduct alleged above constitutes dilution of plaintiff's trade dress rights under Louisiana state law, La. R.S. §51:223.1, entitling plaintiff to preliminary and permanent injunctive relief.

## COUNT VI

### Louisiana Unfair Trade Practices

**64.**

Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-63 in this Verified Complaint, as if fully set forth in this paragraph.

**65.**

The foregoing conduct constitutes unfair trade practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. §§ 51:1401-1420, entitling plaintiff to preliminary and permanent injunctive relief, actual damages, treble damages, attorney's fees, and costs.

WHEREFORE, plaintiff, Mignon Faget, Ltd., demands judgment against defendants, Leticia G. Tumulty, Joseph N. Tumulty, Jr. and Silver Dream, LLC, jointly, severally and *in solido*: (a) preliminarily and permanently enjoining defendants, their respective agents, servants, employees, and persons acting for or on behalf of them or all of them, from copying, making unauthorized derivative works incorporating, manufacturing, selling, or offering for sale the tulip jewelry designs pictured in Exhibits "C," "D," "E" and "F" attached to this Verified Complaint, any of plaintiff's jewelry designs, or any jewelry designs incorporating plaintiff's trade dress or any trade dress confusingly similar thereto; (b) ordering the seizure and destruction of defendants' offending inventory; (c) requiring defendants to account for and to pay to plaintiff, all gains, profits and advantages derived from defendants' wrongful acts, or such alternative measure or measures of damage, including statutory damages, as may be appropriate; (d) in view of the willfulness of defendants' conduct, trebling any such damages and awarding exemplary damages; (e) awarding interest, attorney's fees and costs; and (f) granting any other or further relief to which plaintiff may be entitled.

Respectfully submitted:

_____
CHARLES R. PENOT, JR.(#01530), Trial Attorney
ERIN FURY PARKINSON (# 22549)
**MCGLINCHEY STAFFORD, PLLC**
643 Magazine Street
New Orleans, LA  70130
504-586-1200

**Attorneys for Mignon Faget, Ltd.**

501924 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MIGNON FAGET, LTD. | § | CIVIL ACTION |
| | § | |
| | § | NO. _____ |
| VERSUS | § | |
| | § | |
| | § | SECTION _____ |
| LETICIA G. TUMULTY, JOSEPH N. TUMULTY, JR. AND SILVER DREAM, LLC | § § § | MAGISTRATE DIV. ____ |
| * * * * * * * | § § | |

### DECLARATION OF VIRGINIA P. SAUSSY BAIRNSFATHER

I, **VIRGINIA P. SAUSSY BAIRNSFATHER,** do hereby declare and state as follows:

1. I am an Executive Vice-President of Mignon Faget, Ltd. In that position, I am responsible for all marketing efforts of Mignon Faget, Ltd. I am over the age of 18 years, of sound mind and memory, and am competent and authorized to make this verification.

2. I have read the Verified Complaint to be filed in the matter of Mignon Faget, Ltd. v. Leticia G. Tumulty, Joseph N. Tumulty, Jr. and Silver Dream, LLC, and all

factual matters alleged in the complaint are true and correct. I have personal knowledge of the factual matters alleged in the complaint.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __16__ day of August, 2004.

                                        Virginia P. Saussy Bairnsfather
                                        Executive Vice-President
                                        Mignon Faget, Ltd.

504812.1

# INDEX TO EXHIBITS
## TO PLAINTIFF'S VERIFIED COMPLAINT

| | |
|---|---|
| **Exhibit "A"** | Listing of Mignon Faget, Ltd's and/or Mignon Faget's Awards, Honors and Recognition |
| **Exhibit "B"** | Listing of Mignon Faget, Ltd's and/or Mignon Faget's Exhibits of Works |
| **Exhibit "C"** | Photograph of MFL Tulip Pendant Design |
| **Exhibit "D"** | Photograph of MFL Tulip Dangle Earrings |
| **Exhibit "E"** | Photograph of MFL Tulip Linking Bracelet |
| **Exhibit "F"** | Photograph of MFL Tulip Ring |
| **Exhibit "G"** | Photograph of Defendants' Knock-Off of MFL's Tulip Ring |
| **Exhibit "H"** | Photograph of Defendants' Knock-Off of MFL's Tulip Pendant |
| **Exhibit "I"** | Copy of Unclaimed November 26, 2003 Cease and Desist Letter sent by Mignon Faget, Ltd. to Defendant Letecia G. Tumulty |
| **Exhibit "J"** | Photograph of Defendants' Knock-Off of MFL's Tulip Linking Bracelet |
| **Exhibit "K"** | Photograph of Defendants' Knock-Off of MFL's Tulip Dangle Earrings |
| **Exhibit "L"** | May 24, 2004 Cease and Desist Letter sent via E-mail to Defendant Leticia G. Tumulty |
| **Exhibit "M"** | May 24, 2004 Cease and Desist Letter sent via Hand Delivery to Defendant Leticia G. Tumulty |
| **Exhibit "N"** | Certificate of Registration, Number VA 1-201-273, on MFL Tulip Pendant |
| **Exhibit "O"** | Copyright Registration Application for MFL Tulip Dangle Earrings |
| **Exhibit "P"** | Copyright Registration Application for MFL Tulip Ring |
| **Exhibit "Q"** | Copyright Registration Application for MFL Tulip Linking Bracelet |
| **Exhibit "R"** | September 11, 2003 letter of Register of Copyrights Notifying of Refusal to Register |

501924.1

17

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED